UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LISA CABRERA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-10-1069 |
| | § | |
| JACOBS TECHNOLOGY, INC, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

### I.    Introduction

Pending before the Court is the defendant's, Jacobs Technology, Inc., motion for summary judgment (Docket Entry No. 11), in support of which they filed a memorandum (Docket Entry No. 12).  The plaintiff, Lisa Cabrera, filed a response in opposition (Docket Entry No. 13),[1] to which the defendant filed a reply (Docket Entry No. 15).  After having carefully reviewed the motion, the responses, the record and the applicable law, the Court grants the defendant's motion.

### II.    Factual Background

This case concerns the plaintiff's allegations of Title VII sexual harassment and related charges.  In 2005, the defendant contracted to provide mission support services for the National Aeronautics and Space Administration ("NASA") at the Johnson Space Center.  The defendant subcontracted with five entities, including Geo Control Systems ("Geo").  Collectively, the defendant and these subcontractors comprise the Engineering and Science Contract Group, which employs approximately 1,800 workers.  Geo has employed the plaintiff since 2005.  From

---

[1] The Court admonishes the plaintiff for filing this response after her deadline for doing so had elapsed.  The defendant moved for summary judgment on March 30, 2011.  Local Rule 7.3 provides that the plaintiff's opposition brief was due twenty-one days thereafter, but she filed her response belatedly and without seeking the Court's leave to do so.

2005 to September 2009, the plaintiff worked as a Facility Coordinator in Building 36.  NASA employee Damon Wilson, and Tuan Nguyen, an employee of the defendant, also worked in Building 36.

From February to August of 2009, Wilson offended the plaintiff in a number of ways.  In April 2009, the plaintiff mentioned her concerns to her Geo supervisor, asking her supervisor to keep her concerns confidential.  In August 2009, the plaintiff informed the defendant's human resources department of her concerns, and that department investigated her complaint.  In September 2009, the defendant transferred the plaintiff to a Facility Coordinator position in Building 14.  When the plaintiff contested this transfer, the defendant compared the two Facility Coordinator positions, and it determined that they had similar duties and responsibility levels.  In December 2009, the plaintiff was promoted to the position of Alternate Facility Manager.  She has received several awards since being transferred to Building 14, as well as commendations in a work newsletter.

III.     **Contentions of the Parties**

A.     **The Plaintiff's Contentions**

The plaintiff asserts Title VII claims for: (1) sex discrimination and sexual harassment; (2) discrimination;[2] (3) retaliation; and (4) intentional infliction of emotional distress ("IIED").  She claims that in April 2009, Wilson sat down next to her, leaned over her, took one of her cigarettes, licked it, and touched her breast.  She maintains that during a meeting concerning a NASA hot water system in July 2009, Wilson asked her, "Is that water hot enough to get all of

---

[2]     The plaintiff performed the requisite conditions precedent by timely filing her discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), and timely filing her present complaint after receiving her right-to-sue letter.
        While her complaint included "sex discrimination," "sexual harassment" and "discrimination" as separate claims, the plaintiff's complaint and deposition treat these claims as a single harassment claim, and accordingly, so does the Court.  To the extent that the plaintiff asserted any discrimination claim, the Court addresses it as part of her retaliation claim in Section **V(B)(2)**, *infra*.

that makeup off of your face?"  During that same meeting, when asked how detailed an explanation Wilson would like of a topic, he allegedly responded, "We all know how [the plaintiff] likes quickies.  We'll go that route."

The plaintiff further claims that Wilson commented about her attire, saying things such as "is that skirt short enough," and "are those heels high enough?"  She asserts that Wilson also belittled other people at the work site, including Bill Beauregard, George Hartwick and James Rodriguez.  She claims that Wilson was the only person who sexually harassed her, but that Nguyen observed Wilson's harassment and did nothing to stop it.

She maintains that the defendant transferred her to Building 14 in retaliation for reporting her complaints about Wilson.  Further, she asserts that, during a Thanksgiving luncheon, Nguyen retaliated against her by commenting or inquiring about whether she was allowed in Building 36, thus making her feel unwelcome after she reported Wilson's behavior.  The plaintiff maintains that, even though the defendant is not her employer, it is liable for its employees and agents' conduct under the theories of joint venture and enterprise, *respondeat superior* and vicarious liability.  She seeks damages, exemplary damages and injunctive relief.

### B.    The Defendant's Contentions

The defendant contends that the plaintiff's claims fail as a matter of law.  The defendant asserts that it is not the plaintiff's employer, that the plaintiff did not plead a joint employer allegation, and that the joint employer doctrine does not apply.  The defendant avers that the plaintiff's sexual harassment claim also fails because she has not alleged severe and pervasive conduct, because Wilson was an equal opportunity harasser, and because the defendant implemented a prompt remedial measure by transferring her to Building 14.  The defendant maintains that the plaintiff's retaliation claim fails because her transfer was not an adverse

employment action, and she has shown no retaliatory animus or pretext.  The defendant avers that Nguyen's comment at a Thanksgiving party does not give rise to a retaliation claim.  The defendant also asserts that the plaintiff's IIED claim fails because it relies upon the same facts as her Title VII claims and because she cannot establish a *prima facie* case of IIED.

## IV.    Standard of Review

Federal Rule of Civil Procedure 56 authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to that party's case and on which that party bears the burden at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).  The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323; *see also, Martinez v. Schlumber*, *Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003).  Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial."  *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex*, *Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075).  "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'"  *Stults*, 76 F.3d at 656 (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994)).  The nonmovant may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by

unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether the nonmovant has established a genuine issue of material fact, a reviewing court must construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc*., 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court may not "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (citing *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

V.      **Analysis and Discussion**

A.      **The Parties' Relationship**

The Court grants the defendant's motion for summary judgment because it determines that there is no genuine issue of material fact as to the plaintiff's employment status.  Besides the fact that the defendant is not the plaintiff's employer, the defendant did not discriminate or retaliate against the plaintiff.  Rather, the defendant took prompt remedial measures to address the plaintiff's complaints within the context of a complex work environment that involved several distinct employers.

Title VII provides, in relevant part, that "[i]t shall be an unlawful employment practice for an *employer* . . . to fail or refuse to hire or to discharge any individual or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1) (emphasis added).  Thus, to state a Title VII claim, a plaintiff has the burden of proving that the defendant was her employer.  *See Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 340 n.8 (5th Cir. 2003) ("relief under Title VII is available only against an employer, not an individual supervisor or fellow employee") (internal citations omitted).  The Fifth Circuit has reasoned that "[d]etermining whether a defendant is an 'employer' under Title VII . . . involves a two-step process.  First, the defendant must fall within the statutory definition.  Second, there must be an employment relationship between the plaintiff and the defendant."  *Deal v. State Farm County Mut. Ins. Co. of Tex.*, 5 F.3d 117, 118 (5th Cir. 1993) (citing *Fields v. Hallsville Indep. Sch. Dist.*, 906 F.2d 1017, 1019 (5th Cir. 1990), *cert. denied*, 498 U.S. 1026 (1991)).

An "employer" is defined under Title VII as "a person . . . who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or

preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b).  While the plaintiff has not specifically pled a joint employer allegation, the Court determines that, even had she pled such an allegation, the joint employer doctrine does not apply to her claims.  Under the joint employer doctrine, "superficially distinct entities may be exposed to liability upon a finding that they represent a single, integrated enterprise: a single employer." *Skidmore v. Precision Printing and Pkg., Inc.*, 188 F.3d 606, 616 (5th Cir. 1999) (quoting *Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983).

To ascertain whether a Title VII employment relationship exists between a plaintiff and a defendant, the Fifth Circuit utilizes the "'hybrid economic realities/common law control test.'" *Deal*, 5 F.3d at 118-19 (quoting *Fields*, 906 F.2d at 1019).  Under this test:

> The right to control an employee's conduct is the most important component of this test.  *Fields*, 906 F.2d at 1019.  When examining the control component, we have focused on whether the alleged employer has the right to hire and fire the employee, the right to supervise the employee, and the right to set the employee's work schedule.  *See Id.* at 1020; *Mares v. Marsh*, 777 F.2d [1066,] 1068 [(5th Cir. 1985)].  The economic realities component of our test has focused on whether the alleged employer paid the employee's salary, withheld taxes, provided benefits, and set the terms and conditions of employment.  *See Mares*, 777 F.2d at 1068.

*Deal*, 5 F.3d at 118-19; *see also, Muhammad v. Dallas County Cmty. Supervision and Corr. Dep't*, 479 F.3d 377, 380 (5th Cir. 2007).

First, under the test's control component, the Court determines that while the parties did interact during the workday, Geo maintained primary control over the plaintiff.  Geo, not the defendant, hired the plaintiff after she applied directly to Geo.  Geo retained the right to supervise her.  To the extent that the plaintiff ever requires any disciplinary procedures, Geo would conduct them.  Geo is the entity that possesses her employment records, including her confidential information agreement, her certificate of compliance with Geo's code of business conduct, and her form acknowledging receipt of Geo's policy manual.  Although the defendant

transferred the plaintiff to another building to address her concerns about Wilson, Geo maintained control over the plaintiff.

Second, under the test's economic realities component, the Court finds that Geo paid the plaintiff's wages, provided her benefits including health insurance and a retirement plan, and set the terms and conditions of her employment.  Geo maintains the economic records of the plaintiff's employment, including her W-2 form, her social security card verification form, and her payroll direct deposit authorization form.  Conversely, the record does not show that the defendant made any payment to the plaintiff, paid her social security taxes, was involved in determining her wages, or provided any benefits to her.  The plaintiff has failed to tender any evidence to raise a genuine issue of material fact that she was dependent on the defendant as a matter of economic reality.  Therefore, the Court determines that the economic realities component of the test favors a finding that Geo, not the defendant, served as the plaintiff's direct employer.[3]

Based on the foregoing discussion, the Court finds no genuine issue of material fact as to the plaintiff's employment status.  After evaluating the relevant factors set forth above, the Court determines that the defendant was not the plaintiff's employer within the meaning of Title VII, and so the plaintiff cannot maintain a Title VII cause of action against it.  Accordingly, the defendant's motion for summary judgment is granted.

---

[3] Notably, while the plaintiff has filed EEOC charges against the defendant and NASA, she has never filed one against her actual employer, Geo.

B.     **Title VII Claims**

1.     **Sexual Harassment**

a.     **Wilson's Conduct Was Not Severe and Pervasive**

Even were the plaintiff's Title VII claims not barred because the defendant is not the plaintiff's employer, the Court still grants the defendant's motion regarding the plaintiff's sexual harassment claims because the contested conduct is not severe or pervasive.  A Title VII sexual harassment claim is actionable "only if it is 'so 'severe or pervasive' as to 'alter the conditions of [the victim's] employment and create an abusive working environment.'"  *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001) (quoting *Faragher v. Boca Raton*, 524 U.S. 775, 786 (1998)).  Because "Title VII is not a general civility code for the American workplace," the contested conduct must be extreme.  *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 263 (5th Cir. 1999) (citing *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)).

Accordingly, a handful of sporadic incidents does not rise to the level of actionable harassment.  "A recurring point in [Supreme Court] opinions is that 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"  *Shepherd v. Comptroller of Public Accounts of State of Texas*, 168 F.3d 871, 874 (5th Cir. 1999) (citing *Faragher*, 524 U.S. 775). "To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so."  *Shepherd*, 168 F.3d at 874 (internal citation omitted).  "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.'"  *Oncale v. Sundower Offshore Servs.*, 523 U.S. 75, 81 (1998), (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23 (1993)).

The plaintiff's sexual harassment claim cannot survive summary judgment because she has not shown Wilson's behavior to be objectively severe.  *See Oncale*, 523 U.S. at 81 (quoting *Harris*, 510 at 23).  The plaintiff admits that Wilson's conduct did not affect her ability to do her job, and the sporadic events of which she complains do not rise to the level of severe and pervasive harassment.  *See Clark County Sch. Dist.*, 532 U.S. at 270-71 (quoting *Faragher*, 524 U.S. at 786).  The Fifth Circuit "has repeatedly held that 'stray remarks' do not demonstrate [discrimination].  In order for [a discriminatory] comment to be probative of an employer's discriminatory intent, it must be direct and unambiguous."  *EEOC v. Tex. Instruments Inc.*, 100 F.3d 1173, 1181 (5th Cir. 1996) (internal citations and explanatory parentheticals omitted) (with respect to age discrimination).  Therefore, the Court grants the defendant's motion regarding the plaintiff's sexual harassment claim for this additional reason.

### b.    The Defendant's Prompt Remedial Measures

Further, even if the plaintiff could assert an actionable Title VII harassment claim, her claim would still fail because the defendant implemented a prompt remedial measure by transferring her to an equivalent position in another building.  "To establish an actionable claim of sexual harassment in the workplace, a plaintiff must demonstrate . . . [both] unwelcome sexual harassment . . . [and] that the employer either knew or should have known of the harassment and failed to take prompt remedial action."  *DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 593 (5th Cir. 1995) (internal citation omitted).  "To constitute 'prompt remedial action,' an employer's response to a harassment complaint must be 'reasonably calculated to end the harassment.'"  *Kreamer v. Henry's Towing*, 150 Fed. Appx. 378, 382 (5th Cir. 2005) (citing *Skidmore*, 188 F.3d at 615).  "What is appropriate remedial action will necessarily depend on the particular facts of the case – the severity and persistence of the harassment, and the effectiveness

of any initial remedial steps." *Kreamer*, 150 Fed. Appx. at 382 (citing *Skidmore*, 188 F.3d at 615). As such, the Court "assess[es] the employer's remedy proportionately to the seriousness of the offense and in light of the company's lines of command, organizational format[,] and immediate business demands." *Id*. (internal quotation omitted).

Once the plaintiff alerted the defendant of her concerns in August of 2009, the defendant conducted a prompt investigation and implemented a remedy reasonably calculated to end the harassment – it transferred the plaintiff to the same position in a different building. The defendant could not transfer Wilson because he was employed by NASA – not by the defendant and not by the plaintiff's employer. The plaintiff has testified that, since her transfer, she has not experienced any further sexual harassment at the workplace. Under the "particular facts of the case," the plaintiff has not shown that the defendant failed to implement an "appropriate remedial action." *See Kreamer*, 150 Fed. Appx. at 381-82 (citing *Skidmore*, 188 F.3d at 615). Therefore, the Court grants the defendant's summary judgment motion regarding the plaintiff's sexual harassment claim for this supplementary reason.

### 2. Retaliation

Even if the defendant did qualify as the plaintiff's employer, her retaliation claim still fails because she has not asserted an adverse employment action and because she has not shown a retaliatory animus. To establish a *prima facie* case of Title VII retaliation, "a plaintiff must show that: (1) [she] engaged in activity protected by Title VII; (2) [she] was subjected to an adverse employment action; and (3) a causal link existed between the protected activity and the adverse employment action." *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 319 (5th Cir. 2004) (citing *Banks v. E. Baton Rouge Parish Sch. Bd.* 320 F.3d 570, 575 (5th Cir. 2003)). Summary judgment is appropriate if the plaintiff is unable to satisfy any of the aforementioned

three elements.  *Stewart*, 586 F.3d at 331 (citing *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 769 (5th Cir. 2001)).

To constitute an adverse employment action in the context of a Title VII retaliation claim, the challenged employment action "must be 'materially adverse,' [or] one that would 'dissuade[ ] a reasonable worker from making or supporting a charge of discrimination.'"  *Stewart v. Miss. Transp. Com'n*, 586 F.3d 321, 331 (5th Cir. 2009) (quoting *Burlington Northern and Santa Fe. Ry. Co. v. White*, 548 U.S. 53, 68 (2006)).  "The purpose of this objective standard is 'to separate significant from trivial harms' and 'filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'"  *Stewart*, 586 F.3d at 331 (quoting *Burlington*, 548 U.S. at 68).

The Court finds that the plaintiff has not established the second or third elements of her *prima facie* retaliation claim.  The plaintiff's allegations of her transfer and Nguyen's comment at the Thanksgiving luncheon do not amount to legally actionable adverse employment actions.  *See Davis*, 383 F.3d at 319 (citing *Banks*, 320 F.3d at 575).  As to the second element of her *prima facie* retaliation claim, she has not established that she was subject to an adverse employment action.  *See Davis*, 383 F.3d at 319 (citing *Banks*, 320 F.3d at 575).  For purposes of retaliation, an adverse employment action need not amount to an "ultimate" employment decision such as hiring, firing, or demotion, but extends to any action that "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination."  *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (internal quotation omitted).  However, "[a]n employment action that 'does not affect the job duties, compensation, or benefits' is not an adverse employment action."  *Cooper v. United Parcel Service, Inc.*, 368 Fed. Appx. 469, 474 (5th Cir. 2010) (internal quotations omitted).

A transfer can constitute an adverse employment action if it is the "equivalent of a demotion" or "objectively worse," than the former position. *Cooper*, 368 Fed. Appx. at 474 (citing *Alvarado v. Tex. Rangers*, 492 F.3d 605, 612 (5th Cir. 2007)). "The focus is on the objective qualities of the positions, rather than an employee's subjective preference for one position over another. That subjective preference, alone, is an insufficient basis for finding an adverse employment action." *Cooper*, 368 Fed. Appx. at 474 (internal quotation omitted). Furthermore, a transfer is not an adverse employment action when implemented to remove an employee from an environment that she finds offensive. *See Nash v. Electrospace System, Inc.*, 9 F.3d 401, 403 (5th Cir. 1993).

The plaintiff has failed to demonstrate that her transfer to Building 14 was the "equivalent of a demotion." *See Cooper*, 368 Fed. Appx. at 474. The plaintiff kept the same title, pay and benefits, and her workload and duties remained roughly equivalent. The defendant permissibly transferred her to remove her from an environment that she found offensive. *See Nash*, 9 F.3d at 403. Additionally, she received several awards in her new position and was promoted soon after her transfer. The plaintiff has provided insufficient evidence that the defendant's decision to transfer her was retaliatory. Rather, the defendant transferred the plaintiff to an equivalent position to remedy her concerns about Wilson.

As to the third element of her *prima facie* retaliation claim, she has not established that she suffered an adverse employment action *as a result* of reporting Wilson's alleged discrimination. *See Davis*, 383 F.3d at 319 (citing *Banks*, 320 F.3d at 575). The plaintiff has not shown that any discrimination occurred specifically because she complained of Wilson's alleged discrimination. Rather, she complains of the defendant's implementation of a permissible remedy for her harassment claims. Since Wilson was not employed by the defendant, it was not

within the defendant's power to transfer Wilson.  Also, the defendant's remedy was admittedly effective because the plaintiff testifies that Wilson has not harassed her since her transfer.  Accordingly, the Court grants the defendant's motion on this issue for this reason, too.

### B.      IIED

Even assuming that the Court had supplemental jurisdiction over the plaintiff's IIED claim, that claim would still fail because the gravamen of her IIED claim is the same as the gravamen of her other claims,[4] and because she has failed to establish a *prima facie* IIED claim.  The Texas Supreme Court has stated that IIED is "first and foremost, a 'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress."  *Hoffman-La Roche v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) (internal citations omitted) ("Where the gravamen of a plaintiff's complaint is really another tort, [IIED] should not be available.").  The Fifth Circuit also recognizes that IIED is a "gap-filler."  *Day v. Rogers*, 260 Fed. Appx. 692, 696 (5th Cir. 2007) (internal citation omitted).  Moreover, the tort of IIED was "never intended to supplant or duplicate existing statutory or common-law remedies."  *Creditwatch, Inc. v. Jackson*, 157 S.W.3d 814, 816 (Tex. 2005) (internal citation omitted).  This is true even if a plaintiff's other claims are barred.  *See Creditwatch*, 157 S.W.3d at 816.

In this case, the gravamen of the plaintiff's IIED claim is identical to her Title VII claims because all of those claims are based on the same alleged facts.  Under Texas law, the plaintiff may not recover for IIED when she has other avenues of redress, regardless of her ultimate

---

[4] Under Texas law, to recover damages for IIED, "a plaintiff must prove that 1) the defendant acted intentionally or recklessly, 2) the conduct was extreme and outrageous, 3) the actions of the defendant caused the plaintiff emotional distress, and 4) the resulting emotional distress was severe.  *See Standard Fruit & Vegetable Co. v. Johnson*, 985 S.W.2d 62, 65 (Tex. 1998) (internal quotation and citation omitted).

success on the alternative available claims.  *See Creditwatch* at 816.  Therefore, the Court grants the defendants' motion for summary judgment regarding the plaintiff's IIED claim for this additional reason.

Moreover, even if her IIED claim was not otherwise barred, she has failed to assert a *prima facie* IIED claim.  The Court may find IIED liability "[o]nly where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993) (internal citation omitted).  "Only in the most unusual cases does the conduct move out of the realm of an ordinary employment dispute . . . into the classification of extreme and outrageous, as required for the tort of [IIED]." *Prunty v. Arkansas Freightways, Inc.*, 16 F.3d 649, 654 (5th Cir. 1994) (internal citations and quotations omitted).  The plaintiff has not asserted the egregious facts necessary to support an IIED claim. Accordingly, the Court grants the defendant's motion on this issue.

**VI.** **Conclusion**

Based on the foregoing discussion, the Court grants the defendant's motion for summary judgment.

It is so **ORDERED**.

SIGNED at Houston, Texas this 17th day of May, 2011.

_____
Kenneth M. Hoyt
United States District Judge